## WOOD *v.* CLARY.

It is the duty of a livery-stable keeper to exercise extraordinary diligence for the protection and safe-keeping of a mule entrusted to him. He is not liable for loss resulting solely from a disease with which the mule was afflicted at the time it was delivered into his keeping, where he was not negligent in respect thereto. The facts examined, and held to be insufficient to authorize a recovery.

JUNE 15, 1915.

Action for damages. Before Judge Walker. Wilkes superior court. July 7, 1914.

*William Wynne* and *J. M. Pitner,* for plaintiff in error.
*Colley & Colley,* contra.

EVANS, P. J. This is a suit for damages. The plaintiff was the owner of a mule which he left with the defendant, a livery-stable-man, for the purpose of sale. The plaintiff contends that the mule died of an injury sustained in consequence of the defendant's negligence. On the trial he recovered a verdict, which the court refused, on motion for new trial, to set aside.

The case depends upon the sufficiency of the evidence to support the verdict. The plaintiff testified that he purchased the mule from the defendant, who was the keeper of a public livery-stable, in November, and in the following February he carried the mule to the defendant's place of business and turned it over to the defendant, to be put where it could be sold. Some time in March the plaintiff was shown a knot on the shoulder of the mule. Later, in about two and a half months after placing the mule with the defendant, the plaintiff took the mule to his home, and paid the liveryman his bill, amounting to $37.50. The knot on the mule's shoulder continued to enlarge, and was lanced by a horse doctor, on the defendant's suggestion. No benefit came from the operation, and the plaintiff notified the defendant that the operation was without benefit to the mule, and the defendant said he would get a veterinary from Augusta, which he did. The veterinary operated on the mule, and in a few hours it died. The plaintiff's total loss, includ-

ing the items specified, amounted to a sum in excess of the recovery. A witness for the plaintiff testified that mules when put in the livery-stable for sale are put in the mule pen. The defendant testified that he sold the mule to the plaintiff in November, and that in the following February the plaintiff brought the mule to him to sell for him. The next morning after the mule was put in his possession for sale he exhibited it to Mr. Barksdale, who had spoken about buying the mule. Mr. Barksdale rubbed his hand over the mule's shoulders and said that he did not care to buy the mule, as there was a little knot on its shoulder, that could be felt but could not be seen. The shoulders were clean and the hair and skin not broken. The knot could be felt but could not be seen. When the plaintiff brought the mule to him for sale he had it put in the pen with five or six fine mules, none of which were vicious. It is customary and usual to keep all mules intended for sale in a pen. No mule is placed in a pen with shoes on its hind feet. The plaintiff's mule had this growth on it before it was brought to him. It could not have developed in one night. The knot was discovered the next day after the plaintiff brought it to him. He took an interest in the mule, as the plaintiff had bought it from him, and had left it with him to sell; so when the plaintiff told him that the mule was getting worse, he suggested that a veterinary from Augusta be sent for. The veterinary came, and the defendant sent a note to the plaintiff to pay the bill. He allowed the veterinary to operate on the mule, but did not pay him, and as the defendant had sent for the doctor he had to pay his charge. The mule was placed in his care as agent to sell, and was not brought to him as a livery-stableman. He was to receive no compensation for the sale of the mule, but was to sell it as an accommodation for the plaintiff, who was to pay only the actual board-bill incurred before the sale was made. Barksdale, a witness for the defendant, testified that on the morning after the mule was put in the defendant's stable by the plaintiff, he examined it with a view of purchasing it. Underneath the skin on one of the mule's shoulders he felt a lump. This lump could not be seen, nor was the hair or skin on the mule's shoulder broken or ruffled. Witness told the defendant that he did not care to, buy the mule at all with a lump on its shoulder. He wished to purchase the mule before the plaintiff bought it, and several times examined it. Newsome testified that he went out to the plaintiff's

place with the defendant, and they together examined the mule, and found it in bad condition, and the defendant said he would write for the veterinary. The plaintiff did not tell defendant that he would pay the veterinary's bill.

Notwithstanding the keeper of the livery-stable was to receive no compensation for effecting a sale of the mule, yet he was to be paid for its keep pending the consummation of a sale. His possession of the mule was that of a keeper of a livery-stable. The keeper of a livery-stable is a depositary for hire, and is bound to the same diligence and entitled to the same lien as an innkeeper. Civil Code (1910), § 3515. An innkeeper is bound to extraordinary diligence in preserving the property of his guest intrusted to his care. Civil Code (1910), § 3508. The keeper of the livery-stable, therefore, is bound to extraordinary diligence in protecting the property which is committed to his care. The evidence in the present case is without conflict. The plaintiff seeks to draw the inference that the defendant was negligent in placing his mule in a pen with other mules, and that the knot was the result of a kick. There is nothing in the evidence on which to base this contention. It is undisputed that it was customary and usual to place mules for sale in pens with other mules; and that the mules in the pen where the plaintiff's mule was put were not vicious, and were unshod on their hind feet. The mule was examined on the next day. There was nothing on the shoulder of the mule to indicate that it had been kicked. The skin was not broken; the hair was not ruffled. The knot seemed to have been observable only by touch. In all probability it was an incipient tumor with which the mule was affected at the time it was turned over to the livery-stableman; and, under the facts developed at the trial, the death of the mule was not attributable to the defendant's negligence.

<i>Judgment reversed. All the Justices concur.</i>